IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

STANLEY LARRY VARGAS,

        Plaintiff,

      vs.                                 No. 1:20-CV-00323-MV-KRS

KILOLO KIJAKAZI, Acting Commissioner
of the Social Security Administration,[1]

        Defendant.

**PROPOSED FINDINGS AND RECOMMENDED DISPOSITION**

Plaintiff seeks review of the Commissioner's determination that he is not entitled to disability insurance benefits under Title II and Title XVI of the Social Security Act, 42 U.S.C. §§ 401-34, 1381-83f. On April 23, 2020, in accordance with 28 U.S.C. § 636(b)(1)(B), (b)(3), this case was referred to United States Magistrate Judge Kevin R. Sweazea to conduct any necessary hearings and to recommend an ultimate disposition. (*See* Doc. 7) (order of reference). Having considered Plaintiff's Motion to Reverse and Remand for a Rehearing (Doc. 22), filed January 13, 2021; the Commissioner's response in opposition (Doc. 26), filed March 26, 2021; and Plaintiff's reply (Doc 27), filed December 27, 2021, the undersigned RECOMMENDS that the Court GRANT Plaintiff's motion for the reasons set forth below.

**I.  PROCEDURAL BACKGROUND**

On March 28, 2016, Plaintiff filed an initial application for disability insurance benefits and protectively filed an application for supplemental security income. (*See* Administrative Record ("AR") at 193-94). Plaintiff alleged that he had become disabled on December 1, 2015, due to chronic nerve pain, muscle weakness in his limbs, chest pain, and confusion. (*Id.* at 372).

---

[1] The Acting Commissioner is substituted as the proper Defendant pursuant to FED. R. CIV. P. 25(d).

His application was denied at the initial level on October 11, 2016 (*id.* at 193-94), and at the

reconsideration level on July 13, 2017 (*id.* at 219-20). Plaintiff requested a hearing (*see id.* at

276-77), which ALJ Michael Leppala conducted on October 22, 2018 (see *id.* at 157-92).

Plaintiff was represented by counsel and testified at the hearing (*id.* at 157, 162-83, 185-89), as

did a vocational expert (*id.* at 161-62, 164-65, 183-85, 190-91).

On February 6, 2019, the ALJ issued his decision, finding that Plaintiff was not disabled

under the relevant sections of the Social Security Act. (*Id.* at 132-47). Plaintiff requested that the

Appeals Council review the ALJ's decision (*id.* at 154-55), and on February 10, 2020, the

Appeals Council denied the request for review (*id.* at 1-4), which made the ALJ's decision the

final decision of the Commissioner. On April 10, 2020, Plaintiff filed the complaint in this case

seeking review of the Commissioner's decision. (Doc. 1).

## II.  LEGAL STANDARDS

### A.  STANDARD OF REVIEW

Judicial review of the Commissioner's decision is limited to determining "whether

substantial evidence supports the factual findings and whether the ALJ applied the correct legal

standards." *Allman v. Colvin*, 813 F.3d 1326, 1330 (10th Cir. 2016); *see also* 42 U.S.C. § 405(g).

If substantial evidence supports the ALJ's findings and the correct legal standards were applied,

the Commissioner's decision stands, and the plaintiff is not entitled to relief. *See, e.g.*, *Langley v.*

*Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004). Although a court must meticulously review the

entire record, it may neither reweigh the evidence nor substitute its judgment for that of the

Commissioner. *See, e.g.*, *id.* (quotation omitted).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion." *See Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019)

(quotation omitted); *Langley*, 373 F.3d at 1118 (quotation omitted). Although this threshold is "not high," evidence is not substantial if it is "a mere scintilla," *Biestek*, 139 S. Ct. at 1154 (quotation omitted); "if it is overwhelmed by other evidence in the record," *Langley*, 373 F.3d at 1118; or if it "constitutes mere conclusion," *Grogan v. Barnhart*, 399 F.3d 1257, 1261-62 (10th Cir. 2005) (quotation omitted). Thus, the Court must examine the record as a whole, "including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan*, 399 F.3d at 1262. While an ALJ need not discuss every piece of evidence, "[t]he record must demonstrate that the ALJ considered all of the evidence," and "a minimal level of articulation of the ALJ's assessment of the evidence is required in cases in which considerable evidence is presented to counter the agency's position." *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996). "Failure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal." *Byron v. Heckler*, 742 F.2d 1232, 1235 (10th Cir. 1984) (quotation omitted).

## B.  DISABILITY FRAMEWORK

"Disability," as defined by the Social Security Act, is the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). The Social Security Administration ("SSA") has devised a five-step sequential evaluation process to determine disability. *See Barnhart v. Thomas*, 540 U.S. 20, 24 (2003); *Wall v. Astrue*, 561 F.3d 1048, 1051-52 (10th Cir. 2009); 20 C.F.R. §§ 404.1520, 416.920. If a finding of disability or non-disability is directed at any point, the SSA will not proceed through the remaining steps.

*Thomas*, 540 U.S. at 24. At the first three steps, the ALJ considers the claimant's current work activity and the severity of his impairment or combination of impairments. *See id.* at 24-25. If no finding is directed after the third step, the Commissioner must determine the claimant's residual functional capacity ("RFC"), or the most that he is able to do despite his limitations. *See* 20 C.F.R. §§ 404.1520(e), 404.1545(a)(1), 416.920(e), 416.945(a)(1). At step four, the claimant must prove that, based on his RFC, he is unable to perform the work he has done in the past. *See Thomas*, 540 U.S. at 25. At the final step, the burden shifts to the Commissioner to determine whether, considering the claimant's vocational factors, he is capable of performing other jobs existing in significant numbers in the national economy. *See id.*; *see also Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988) (discussing the five-step sequential evaluation process in detail).

### III.  THE ALJ'S DETERMINATION

The ALJ reviewed Plaintiff's claim pursuant to the five-step sequential evaluation process. (AR at 133-34). First, the ALJ found that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2015, and had not engaged in substantial gainful activity since his alleged onset date of December 1, 2015. (*See id.* at 134). The ALJ then found at step two that Plaintiff suffered from the following severe impairments: neurocognitive disorder, dysfunction of major joints, coronary artery disease, cervical degenerative disc disease, and obesity. (*Id.*). At step three, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met the criteria of listed impairments under Appendix 1 of the SSA's regulations. (*See id.* at 134-37).

Proceeding to the next step, the ALJ reviewed the evidence of record, including certain medical evidence and Plaintiff's own subjective symptom testimony. (*See id.* at 138-45). Based

on his review of the evidence, the ALJ concluded that Plaintiff possessed an RFC to perform

light work with certain modified exertional and nonexertional restrictions. (*See id.* at 137).

Moving to step five, the ALJ determined that while Plaintiff was unable to perform any

past relevant work, he could have performed other jobs in significant numbers in the national

economy until June 24, 2016. (*See id.* at 145-46). The ALJ therefore concluded that Plaintiff's

work was not precluded by his RFC through his date last insured of December 31, 2015, that he

was therefore not disabled through that date for purposes of his disability insurance benefits

application, and that he had been under a disability beginning on June 24, 2016, for purposes of

his supplemental security income application. (*See id.*)

## IV.  DISCUSSION

Among other purported errors, Plaintiff argues that the ALJ committed reversible error

by failing to evaluate medical opinion evidence offered by neuropsychologist John King, Ph.D.

(*See* Doc. 22 at 12-14). Because the undersigned recommends remand on the basis that the ALJ

did not follow controlling legal standards when he failed to weigh Dr. King's opinions and that

this error was not harmless, the Court need not reach Plaintiff's additional claims of error. *See,*

*e.g.*, *Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003).

Plaintiff's primary care physician referred him to Dr. King for an evaluation that was

completed on November 25, 2016. (*See* AR at 635-44). The purpose of the assessment was "to

evaluate [Plaintiff] for cognitive and emotional functioning to rule out major neurocognitive

disorder." (*Id.* at 635). As part of this evaluation, Dr. King interviewed Plaintiff, reviewed his

past psychiatric, developmental, and medical history, and administered a variety of tests. (*See id.*

at 637-42). In a report completed six days later, Dr. King concluded that Plaintiff possessed a

"variable" neurocognitive profile with moderately impaired semantic fluency, mildly to severely

impaired capacity to handle simple attention tasks (ranging from average to moderately impaired with added working memory demands), low average to mildly impaired processing speed for motor tasks, and low average to moderately impaired abilities to learn and retain verbal and visual information. (*See id.* at 642). He also noted that some of Plaintiff's subjective feelings of cognitive difficulty were in conjunction with ongoing depressive symptoms and that Plaintiff might therefore need additional time to initiate and focus on new simple attention tasks. (*See id.* at 642-43). Dr. King diagnosed Plaintiff with an unspecified neurocognitive disorder as well as moderate persistent depressive disorder with anxious distress, and he ruled out major neurocognitive disorder, cognitive deficits due to specific etiology, and conversion disorder. (*See id.* at 642-43). Dr. King also recommended structured cognitive behavioral therapy, further neurological evaluation to rule out symptoms of movement disorders, and a medication reevaluation by Plaintiff's treating physician. (*See id.* at 643-44).

The ALJ indirectly cited to certain of Dr. King's findings when discussing the findings of Alvin Smith, Ph.D., a state agency psychological consultant (*see* AR at 142), and the ALJ briefly described Dr. King's report as relating "moderate impairments in task performance and memory leading to a diagnosis of an unspecified neurocognitive disorder" (*id.* at 140). However, the ALJ did not otherwise discuss Dr. King's opinions, evaluate them, or assign any particular weight to them. Plaintiff contends that the ALJ's treatment of Dr. King's opinions did not satisfy the SSA's legal obligations with respect to the evaluation of medical evidence. (*See* Doc. 22 at 12-14) (citing, *e.g.*, 20 C.F.R. § 404.1527(c)[2]).

---

[2] Plaintiff's claims were filed before March 27, 2017, meaning that the new regulations concerning the handling of medical opinion evidence found at 20 C.F.R. § 404.1520c and 20 C.F.R. § 416.920c do not apply to this proceeding. Although Plaintiff applied for benefits under both Title II and Title XVI, the undersigned cites only to the regulations promulgated under Title II and does not also cite to the parallel regulations under Title XVI.

"It is the ALJ's duty to give consideration to all the medical opinions in the record. He must also discuss the weight he assigns to such opinions." *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161 (10th Cir. 2012) (internal citations omitted); *see also* 20 C.F.R. § 404.1527(c) (providing that SSA must "evaluate every medical opinion we receive"); SSR 96-5p, 1996 WL 374183, at *5 (July 2, 1996)[3] (stating that ALJ "must weigh medical source statements under the rules set out in 20 CFR 404.1527 . . ., providing appropriate explanations for accepting or rejecting such opinions"). When weighing medical opinions provided by a medical source such as Dr. King, the ALJ must consider the factors set forth in SSA regulations, *see* 20 C.F.R. § 404.1527(c)(1)-(6), though he need not discuss each of these factors explicitly, *see, e.g.*, *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007) (quotation omitted) ("[N]ot every factor for weighing opinion evidence will apply in every case."). "The record must demonstrate that the ALJ considered all of the evidence," and he must discuss not just the evidence supporting his decision, but also "the uncontroverted evidence he chooses not to rely upon" and "significantly probative evidence he rejects." *See Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996). Further, the ALJ may not "pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence." *Carpenter v. Astrue*, 537 F.3d 1264, 1265 (10th Cir. 2008) (quotation omitted). Nor may an ALJ "mischaracterize or downplay evidence to support her findings." *Bryant v. Comm'r, SSA*, 753 F. App'x 637, 641 (10th Cir. 2018) (unpublished) (citing *Talbot v. Heckler*, 814 F.2d 1456, 1463-64 (10th Cir. 1987)).

Although the Commissioner does not dispute that the ALJ failed to expressly evaluate Dr. King's medical opinions pursuant to 20 C.F.R. § 404.1527(c), she argues that the RFC devised

---

[3] SSRs are binding on the SSA, and while they do not have the force of law, courts traditionally defer to SSRs since they constitute the agency's interpretation of its own regulations and foundational statutes. *See Sullivan v. Zebley*, 493 U.S. 521, 531 n.9 (1990); 20 C.F.R. § 402.35; *see also Andrade v. Sec'y of Health & Human Servs.*, 985 F.2d 1045, 1051 (10th Cir. 1993) (SSRs entitled to deference).

by the ALJ adequately accounts for Dr. King's opinions. (*See* Doc. 26 at 10-11). This is, in effect, a harmless-error argument. "[A]n ALJ's failure to weigh a medical opinion involves harmless error if there is no inconsistency between the opinion and the ALJ's assessment of residual functional capacity," since "giving greater weight to [the opinion] would not have helped [the claimant]." *Mays v. Colvin*, 739 F.3d 569, 578-79 (10th Cir. 2014) (quoting *Keyes-Zachary*, 695 F.3d at 1162-63). The question, then, is whether the ALJ's RFC is sufficiently consistent with Dr. King's medical opinions such that his failure to expressly weigh those opinions did not prejudice Plaintiff. *See id.* at 579.

The Tenth Circuit has "generally held that restricting a claimant to particular work activities does not adequately account for the claimant's mental limitations." *Parker v. Comm'r, SSA*, 772 F. App'x 613, 616 (10th Cir. 2019) (unpublished) (citing *Chapo v. Astrue*, 682 F.3d 1285, 1290 n.3 (10th Cir. 2012)). For instance, a mere restriction to "unskilled" work, or even to a "vague catch-all term" like "simple work, is generally not "sufficient to capture the various fundamentally distinct mental limitations" encompassed in a medical opinion. *Chapo*, 682 F.3d at 1290 n.3. "On the other hand, [the Tenth Circuit has] held that the agency can sometimes account for mental limitations by limiting the claimant to particular kinds of work." *Parker*, 772 F. App'x at 616 (citing *Vigil v. Colvin*, 805 F.3d 1199, 1203-04 (10th Cir. 2015)). "Unless the connection (between the limitation and the work) is obvious, however, the agency must ordinarily explain how a work-related limitation accounts for mental limitations reflected in a medical opinion." *Id.* (citing, *e.g.*, *Vigil*, 805 F.3d at 1203-04).

In addition to finding that Plaintiff could "maintain concentration, persistence, and pace for up to and including two hours at a time with normal breaks throughout a normal workday," the ALJ found that Plaintiff possessed an RFC to

understand, remember, and carry out simple instructions and make commensurate work-related decisions, respond appropriately to supervision, coworkers, and work situations, [and] deal with routine changes in work setting . . . .

(AR at 137). This is effectively an RFC for unskilled work. *See Nelson v. Colvin*, 655 F. App'x 626, 629 (10th Cir. 2016) (unpublished) (quoting SSR 96-9p, 1996 WL 374185, at *9 (July 2, 1996)) (recognizing that unskilled work under SSA requires a claimant to understand, remember, and carry out "simple instructions," make "simple work-related decisions," respond "appropriately" to supervision, co-workers, and work situations, and "deal with changes in a routine work setting"). The Tenth Circuit has held that a claimant's RFC for unskilled work sufficiently accounts for a medical source's findings of moderate limitations in concentration, persistence, and pace, *see Vigil*, 805 F.3d at 1203-04 (citing SSR 96-9p, 1996 WL 374185, at *9); in ability to maintain attention and concentration for extended periods, *see Smith v. Colvin*, 821 F.3d 1264, 1269 (10th Cir. 2016) (citing *Lee v. Colvin*, 631 F. Appx 538, 540-42 (10th Cir. 2015) (unpublished)) (finding *Lee* persuasive and adopting its holding); in accepting instructions and responding appropriately to supervisors' criticism, *see id.* (citing *Lee*, 631 F. App'x at 541-42); and in getting along with coworkers or peers without distracting them or exhibiting behavioral extremes, *see id.* (citing *Lee*, 631 F. App'x at 541-42). The court has reasoned that such moderate limitations—and sometimes even marked limitations—are necessarily incorporated into an RFC for unskilled work, which does not measurably require these abilities. *See, e.g.*, *Nelson*, 655 F. App'x at 629 (citing SSR 96-9p, 1996 WL 374185, at *9).

By contrast to the limitations discussed in *Vigil* and *Smith*, Dr. King's findings do not map so neatly to an RFC limited to unskilled work. For example, it is not readily apparent how a moderate impairment in "semantic fluency" (AR at 642) may be resolved by limiting Plaintiff to unskilled work. *Cf.* SSR 96-9p, 1996 WL 374185, at *9 (describing requirements for unskilled work). Nor does a "low average to moderately impaired" ability to "learn and retain verbal and

visual information" (AR at 642) appear to directly translate to the requirements for simple work. *Cf.* SSR 96-9p, 1996 WL 374185, at *9. And while *Vigil* found that a limitation precluding a claimant from handling *complex* tasks was addressed by an RFC for unskilled work performing simple tasks, *see* 805 F.3d at 1203-04, Dr. King's conclusion that Plaintiff is "mild[ly] to severely impaired" in his handling of even *simple* attention tasks (AR at 642-43) appears to be at odds with an RFC limiting him to such tasks. *See* SSR 96-9p, 1996 WL 374185, at *9 (noting that unskilled work generally requires "[u]nderstanding, remembering, and carrying out simple instructions").

Although there may in fact be ways that the limitations found by Dr. King could correspond to an RFC for unskilled work, the ALJ did not explain how this could be the case, and the Court "may not create or adopt post-hoc rationalizations to support the ALJ's decision that are not apparent from the ALJ's decision itself." *See Haga v. Astrue*, 482 F.3d 1205, 1207-08 (10th Cir. 2007). Where, as here, the ALJ's RFC is facially inconsistent with a medical source's findings, the Court may not conclude that the ALJ's failure to weigh that source's medical opinions was harmless. *See, e.g.*, *Le Bow v. Saul*, No. 19-cv-00758 MV/CG, 2020 WL 3072019, at *5 (D.N.M. June 10, 2020), *PFRD adopted*, 2020 WL 3542296 (D.N.M. June 30, 2020) (rejecting harmless error argument in light of inconsistencies between medical source findings and RFC limitations).[4]

---

[4] This conclusion is not altered by the fact that the ALJ summarily described Dr. King's findings (without naming him) as showing "moderate impairments in task performance and memory." (*See* AR at 140). Even if this were an accurate summation of Dr. King's report, a cursory description of a medical source's findings does not suffice to establish an ALJ's compliance with 20 C.F.R. § 404.1527(c), and such a description alone does not render harmless a failure to assign weight to medical evidence when the findings therein are not obviously consistent with the ALJ's RFC. *See, e.g.*, *Le Bow*, 2020 WL 3072019, at *5; *see also Parker*, 772 F. App'x at 616 (citing *Vigil*, 805 F.3d at 1203-04) (noting need for "obvious" correlation between findings and restrictions); *cf. Keyes-Zachary*, 695 F.3d at 1161 (finding omission of weight to be harmless where ALJ discussed evidence and crafted an RFC that was "generally consistent" with its findings). The Commissioner does not argue otherwise.

The Commissioner places particular emphasis on the ALJ's description of Dr. Smith's findings, and his conclusion that "later evidence"—specifically, though not explicitly, Dr. King's report—"appears consistent with Dr. Smith's assessment" of unenumerated "moderate limitations due to an unspecified neurocognitive disorder." (AR at 142) (citing Dr. King's report by exhibit number). To be sure, Dr. Smith found certain moderate limitations that are consistent with an RFC for unskilled work. (*See* AR at 233-35) (finding, *e.g.*, moderate limitations in ability to carry out detailed instructions and maintain attention and concentration for extended periods); *see also, e.g.*, *Smith*, 821 F.3d at 1269 (citation omitted) (finding such moderate limitations to be consistent with demands of unskilled work). And the ALJ did afford "great weight" to Dr. Smith's assessment, at least as it pertained to the period before June 24, 2016. (*See* AR at 142).

But it is one thing to say that the ALJ adequately incorporated *Dr. Smith's* medical opinions into the RFC, and another thing altogether to suggest that the ALJ's failure to expressly weigh *Dr. King's* medical opinions was harmless because those opinions "appear[ed] consistent" with Dr. Smith's incorporated opinions. To begin with, the ALJ's brief statement that Dr. King's report "appear[ed] "consistent" with Dr. Smith's assessment of "moderate limitations" fails to adequately convey the nuances of Dr. King's findings, which described a broader array of limitations (ranging from "low average" abilities to potentially "severe[]" limitations) that could require greater RFC restrictions than the limitations assessed by Dr. Smith. *See Bryant*, 753 F. App'x at 641 (ALJ may not "mischaracterize or downplay evidence to support her findings"); *Carpenter*, 537 F.3d at 1265 (ALJ may not ignore evidence unfavorable to her determination). Moreover, it is not clear that Dr. King's findings of limitations in such abilities as "semantic fluency" and the handling of "simple attention tasks" map cleanly onto Dr. Smith's findings of,

*inter alia*, moderate limitations in carrying out *detailed* instructions and *no* limitations in "[t]he ability to carry out very short and simple instructions." (*See* AR at 233).

Even if these shortcomings were not present, the Commissioner has cited no authority for the apparent proposition that an ALJ may escape his responsibility to evaluate a medical source's opinions by simply incorporating *another* medical source's opinions into an RFC and then declaring in perfunctory fashion that the two source's findings "appear consistent." (*See* Doc. 26 at 10-11). This approach undeniably fails to satisfy the ALJ's general obligation to "discuss the weight he assigns to [medical] opinions." *See Keyes-Zachary*, 695 F.3d at 1161; *see also* 20 C.F.R. § 404.1527(c) (providing that SSA "will evaluate every medical opinion we receive"). Nor does it suffice to demonstrate the sort of "obvious" connection between the limitations found by Dr. King and the work permitted by the RFC as would be necessary to allow the Court to find harmless error. *See, e.g.*, *Parker*, 772 F. App'x at 616 (citing *Vigil*, 805 F.3d 1203-04). More broadly, an incorporation-by-proxy of this nature does not allow the ALJ's assessment—if any— of Dr. King's own findings to "reasonably be discerned." *See, e.g.*, *Adkins v. Colvin*, 645 F. App'x 807, 810 (10th Cir. 2016) (quoting *Davis v. Erdmann*, 607 F.2d 917, 918 n.1 (10th Cir. 1979)). Finally, because the decision itself does not indicate that the ALJ actually intended to indirectly incorporate Dr. King's findings into the RFC by adopting some of Dr. Smith's findings, the Court may not accept any "post-hoc rationalizations" to that effect. *See Haga*, 482 F.3d at 1207-08.

The ALJ did not evaluate Dr. King's medical evidence as required by 20 C.F.R. § 404.1527(c) and governing Tenth Circuit precedent. Because there is no obvious connection between Dr. King's findings and the restrictions that the ALJ included in the RFC, this error was not harmless. Accordingly, the undersigned recommends that the Court remand this matter so

that the ALJ may properly evaluate and weigh the medical evidence as required by SSA

regulations.

## V.  CONCLUSION

**IT IS, THEREFORE, RECOMMENDED** that the Court **GRANT** Plaintiff's Motion to

Reverse and Remand for a Rehearing (Doc. 22) and REMAND this matter to the Commissioner,

with a directive that the Commissioner properly evaluate the medical evidence in accordance

with controlling legal standards.

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN FOURTEEN (14) DAYS OF SERVICE of a copy of these Proposed Findings and Recommended Disposition, they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1)(c). Any request for an extension of time must be filed in writing no later than seven (7) days from the date of this filing. A party must file any objections with the Clerk of the District Court within the fourteen (14) day period, together with any period for which an order is entered granting an extension of time, if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**

_____
**KEVIN R. SWEAZEA**
**UNITED STATES MAGISTRATE JUDGE**